# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

IN RE MANPOWER OF LANSING,
MICHIGAN, INC., DATA BREACH
LITIGATION

Case No.: 1:25-cv-956-PLM-PJG

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
## TO DISMISS AND / OR COMPEL ARBITRATION

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 3

LEGAL STANDARD ............................................................................................... 4

   A.   Fed. R. Civ. P. 12(b)(1) .............................................................................. 4

   B.   Fed. R. Civ. P. 12(b)(6) .............................................................................. 4

   C.   Arbitration .................................................................................................. 5

ARGUMENT ............................................................................................................ 5

   I.   Plaintiffs Sufficiently Establish Article III Standing. ........................................ 5

     A.   Plaintiffs' Privacy Injuries Establish Standing............................................. 5

     B.   The Alleged Actual Fraud Establishes Injury-In-Fact Fairly Traceable to the Alleged Harm. ........................................................................................................ 7

     C.   Targeted and Suspicious Spam Calls Establish Standing. ................................. 8

     D.   Plaintiffs' Remaining Injuries Also Confer Standing. ................................... 9

     E.   The Alleged Substantial Risk of Further Harm Establishes Standing. ......................... 10

   II.   Plaintiffs Have Sufficiently Alleged That Defendant Acted Negligently ..................... 13

   III.   Plaintiffs' Adequately State a Claim for Breach of Implied Contract............................ 17

   IV.   Plaintiffs Adequately State a Claim for Unjust Enrichment. ............................................. 20

   V.   Plaintiffs Consent to Voluntary Dismissal of their Invasion of Privacy Claim ................ 22

   VI.   The Motion to Compel Arbitration Should Be Denied.................................................... 22

CONCLUSION....................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................ 4

*Ass'n of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.*,
  13 F.4th 531 (6th Cir. 2021) .......................................................................... 5

*Bank of Am., NA v. First Am. Title Ins. Co.*,
  878 N.W.2d 816 (Mich. 2016) ..................................................................... 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................ 4

*Bowen v. Paxton Media Grp, LLC*,
  No. 5:21-CV-00143-GNS, 2022 WL 4110319, (W.D. Ky Sept. 8, 2022) .................... 10, 20, 21

*Canterbury v. Corewell Health*,
  No. 24-00189-NZ (Kent Cnty. Cir. Ct. June 11, 2024) ............................. 17

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ...................................................................................... 11

*Coffey v. OK Foods Inc.*,
  No. 2:21-cv-02200, 2022 WL 738072 (W.D. Ark. Mar. 10, 2022) ............ 11

*Dickson v. Direct Energy, LP*,
  69 F.4th 338 (6th Cir. 2023) ...................................................................... 6, 9

*Doe v. Henry Ford Health Sys.*,
  865 N.W.2d 9151 (Mich. App. 2014) ............................................... 14, 15, 20

*Doe v. Mission Essential Grp.*,
  No. 2:23-cv-3365, 2024 WL 3877530 (S.D. Ohio Aug. 20, 2024) ............... 9

*Fero v. Excellus Health Plan, Inc*,
  304 F. Supp. 3d 333 (W.D.N.Y. 2018) ......................................................... 22

*Finesse Express, LLC v. Total Quality Logistics, LLC*,
  No. 1:20CV235, 2021 WL 1192521 (S.D. Ohio Mar. 30, 2021) ................ 10

*Foman v. Davis*,
  371 U.S. 178 (1962) ...................................................................................... 24

*Galaria v. Nationwide Mut. Ins. Co.*,
  663 F. App'x 384 (6th Cir. 2016) ..................................................... 8, 12, 20

*Garza v. Lansing Sch. Dist.*,
  972 F.3d 853 (6th Cir. 2020) ......................................................................... 4

*Gavette v. United Wholesale Mortg., LLC*,
  No. 24-1557, 2025 WL 318224 (6th Cir. Jan. 28, 2025) ............................ 22

*Gay v. Garnet Health*,
  No. 23-cv-06950, 2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) ............... 17

*Haney v. Charter Foods N., LLC*,
  747 F. Supp. 3d 1093 (E.D. Tenn. 2024) .................................................... 12

*Henry v. Dow Chem. Co.*,
  701 N.W.2d 684 (Mich. 2005) .............................................................. 13, 14

*Hummel v. Teijin Auto. Techs., Inc.*,
   No. 23-cv-10341, 2023 WL 6149059 (E.D. Mich. Sept. 20, 2023) ....................... 10, 15, 19, 20

*Hutton v. Nat'l Bd. of Examiners in Optometry*, Inc.,
   892 F.3d 613 (4th Cir. 2018) ............................................................................ 8

*In re Anthem, Inc Data Breach Litig*,
   No. 15-md-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ................................ 20

*In re Arby's Rest Grp Inc Litig*,
   No. 1:17-CV-0514-AT, 2018 WL 2128441 (N.D. Ga. Mar. 5, 2018) ..................................... 18

*In re Arthur J Gallagher Data Breach Litig*,
   631 F Supp 3d 573 (N.D. Ill. 2022) ................................................................ 18

*In re Bon Secours Mercy Health Data Breach Litig*.,
   No. 1:24-cv-594, 2025 WL 1827804 (S.D. Ohio July 2, 2025) ................................ 8

*In re Cap One Consumer Data Sec Breach Litig*,
   488 F. Supp. 3d 374 (E.D. Va. 2020).......................................................... 21, 22

*In re CBIZ Data Breach Litig.*,
   No. 1:24-CV-1722, 2025 WL 1557033 (N.D. Ohio June 2, 2025) ........................... 7

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
   999 F.3d 1247 (11th Cir. 2021)........................................................................ 8

*In re Experian Breach Litig*,
   No. SACV 15-1592 AG (DFmX), 2016 WL 7973595 (C.D. Cal. Dec. 29, 2016) ................. 21

*In re Flagstar Dec. 2021 Data Sec. Incident Litig.*,
   No. 22-cv-11385, 2024 WL 5659583 (E.D. Mich. Sep. 30, 2024) ..................................... 9, 16

*In re Numotion Data Incident Litig.*,
   No. 3:24-cv-00545, 2025 WL 57712 (M.D. Tenn. Jan. 9, 2025) ........................... 10

*In re Premera Blue Cross Customer Data Sec. Breach Litig*,
   198 F. Supp. 3d 1183 (D. Or. 2016) ............................................................... 22

*In re SuperValu, Inc.*,
   870 F.3d 763 (8th Cir. 2017) ........................................................................ 8

*In re Target Corp. Data Sec. Breach Litig.*,
   66 F. Supp. 3d 1154 (D. Minn. 2014)............................................................ 8

*Kingen v. Warner Norcross + Judd LLP*,
   2023 WL 11965363 (W.D. Mich. Oct. 5, 2023).......................................... 10, 14, 15

*Kiser v. Reitz*,
   765 F.3d 601 (6th Cir. 2014) ......................................................................... 4

*Krupa v. TIC Int'l Corp.*,
   2023 WL 143140 (S.D. Ind. Jan. 10, 2023) .............................................. 12

*Lichon v. Morse*,
   968 N.W.2d 461 (Mich. 2021) .................................................................... 23

*Lochridge v. Quality Temp. Servs., Inc.*,
   No. 22-cv-12086, 2023 WL 4303577 (E.D. Mich. June 30, 2023)............................. 7, 13, 18

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ..................................................................................... 4

*Martinez v. Mentavi, Inc.*,

No. 1:25-cv-228, 2025 WL 3780427 (W.D. Mich. Oct. 9, 2025) ............................ 13

*Mason v. Wright Bros. Constr. Co., Inc.*,
No. 1:24-cv-384, 2025 WL 939709 (E.D. Tenn. Mar. 27, 2025) ....................11, 16, 17

*McMorris v. Carlos Lopez & Assocs., LLC*,
995 F.3d 295 (2d Cir. 2021) ..........................................................................11

*Morris Pumps v. Centerline Piping, Inc.*,
729 N.W.2d 898 (Mich. App. 2006) ................................................................ 21

*Morris v. Consolidation Coal Co.*,
446 S.E. 2d 648 (W. Va. 1994) ....................................................................... 18

*Petorovski v. Nestorovski (In re Estate of Nestorovski)*,
769 N.W.2d 720 (Mich. App. 2009) ................................................................ 23

*Polkowski v. Jack Doheny Companies, Inc.*,
No. 2:25-cv-10516, 2025 WL 3079358 (E.D. Mich. Nov. 4, 2025) ................. 13, 16

*Rakyta v. Munson Healthcare*,
No. 354831, 2021 WL 4808339 (Mich. Ct. App. Oct. 14, 2021) ..................... 14, 20

*Remijas v. Neiman Marcus Grp., LLC*,
794 F.3d 688 (7th Cir. 2015) ......................................................................... 12

*Rocco v. Mich. Dep't of Mental Health*,
319 N.W.2d 674 (Mich. App. 1982) ................................................................ 18

*Rodriguez v. CRG Lynwood LLC*,
No. 24-111576, 2025 WL 2700614 (E.D. Mich. Sep. 22, 2025) .................... 5, 6, 16

*Ross v. Consumers Power Co.*,
363 N.W.2d 641 (Mich. 1984) ........................................................................ 18

Sackin v. TransPerfect Glob., Inc.,
278 F Supp 3d 739 (S.D.N.Y. 2017) ............................................................... 19

*Salazar v. Paramount Global*,
133 F.4th 642 (6th Cir. 2025) .......................................................................... 6

*Savidge v. Pharm-Save, Inc.*,
727 F. Supp. 3d 661 (W.D. Ky. 2024) ............................................................. 13

*Silveira v. Commer. Specialty Truck Holdings, LLC*,
No. 5: 25-048, 2025 WL 2323911 (E.D. Ky. Aug. 12, 2025) ............................ 13

*Smith v. Am. Pain & Wellness, PLLC*,
747 F. Supp. 3d 989, 1001 (E.D. Tex. 2024) ...................................................... 7

*Springer v. Cleveland Clinic Emp. Health Plan Total Care*,
900 F.3d 284 (6th Cir. 2018) .......................................................................... 10

*Stinson v. Yum! Brands, Inc.*,
No. 3:23-cv-183, 2025 WL 2755879 (W.D. Ky. Aug. 29, 2025) ..................... 6, 13

*Stratton v. Krywko*,
No. 248669, 2005 WL 27522 (Mich. App. Jan. 6, 2005) ................................... 18

*Tate v. EyeMed Vision Care, LLC*,
No. 1:21-cv-36, 2023 WL 6383467 (S.D. Ohio Sep. 29, 2023) ........................... 9

*Temborius v. Slatkin*,
403 N.W.2d 821 (Mich. App. 1986) ................................................................ 18

iv

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ................................................................ 5, 6, 12

*Viviali v. One Point HR Sols., LLC*,
   No. 2:24-185-DCR, 2025 WL 1158740 (E.D. Ky. Apr. 21, 2025) ....................... 9

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
   489 U.S. 468 (1989) .................................................................... 5

*Washington v. Roosen, Varchetti & Oliver, PLLC*,
   894 F. Supp. 2d 1015 (W.D. Mich. 2012) .......................................... 5

*Webb v. Injured Workers Pharm., LLC*,
   72 F.4th 365 (1st Cir. 2023) ........................................................ 11

*Weisenberger v. Ameritas Mut. Holding Co.*,
   597 F. Supp. 3d 1351 (D. Neb. 2022) ............................................... 8

**Statutes**

42 U.S.C. §1981 ........................................................................ 23

**Rules**

Fed. R. Civ. P 12(b)(1) ................................................................. 4

Fed. R. Civ. P 12(b)(6) ............................................................ 4, 5, 17

Fed. R. Civ. P. 7 ........................................................................ 7

## STATEMENT OF ISSUES PRESENTED

1.     Does Plaintiffs' Complaint adequately allege injuries sufficient to plausibly show standing at this stage of the proceedings?

     Plaintiffs' answer: Yes.

2.     Does Plaintiffs' Complaint adequately allege its claims against Defendant for Count I – negligence, Count II – negligence per se, Count III – invasion of privacy, Count IV – breach of implied contract, and Count V – unjust enrichment?

     Plaintiffs' answer: Yes.

3.     Has Defendant failed to carry its burden to demonstrate that Plaintiffs Brooks, Harmon, and Doublin have enforceable agreements to arbitrate with Defendant?

     Plaintiffs' answer: Yes.

## INTRODUCTION

This lawsuit arises from a ransomware attack in which Manpower of Lansing, Michigan, Inc. ("Manpower" or "Defendant") failed to protect the sensitive personally identifiable information ("PII" or "Private Information") of Plaintiffs Mary Brooks, Sara Conrad, Christine Cooper, Fredrick Cooper, Amy Doublin, Deanna Ghinelli, Shanna Harmon, Courtney Howard, Lorna Lane, Latoya Middleton, and Christopher Platter (collectively, "Plaintiffs"), as well as approximately 144,189 other individuals.

On January 20, 2025, Defendant discovered that cybercriminals had infiltrated its systems and exfiltrated PII and other sensitive data including employees' worksites and hours worked, customer lists, and test results of individuals who provided their information to Defendant, including but not limited to those who did so in connection with employment services and staffing placement (the "Data Breach"). Despite this discovery, Defendant delayed notification for nearly seven months, waiting until August 11, 2025 to notify victims, severely hindering their ability to take timely protective measures against identity theft and fraud.

On November 26, 2025, Plaintiffs filed a Consolidated Class Action Complaint. *See* ECF No. 21 (the "Complaint").[1] Thereafter, Defendant filed its Motion to Dismiss Plaintiffs' Complaint and/or Compel Arbitration, ECF No. 22 (hereinafter "Motion" or "MTD").

Defendant's Motion mischaracterizes Plaintiffs' well-pleaded allegations.

First, crucially, Plaintiffs plausibly allege concrete and particularized injuries sufficient to establish Article III standing. Defendant incorrectly claims that Plaintiffs' allegations—including the theft of their PII, publication of stolen PII on the dark web, lost time and money spent mitigating the Breach, invasion of privacy, and, crucially, fraudulent account activity resulting in

---

[1]    All paragraph markings (¶) hereinafter refer to Plaintiffs' Consolidated Class Action Complaint, ECF No. 21.

account closures—do not constitute present injury. ¶¶ 62, 147, 183, 186. Defendant's framing merely seeks to downplay these allegations, but Plaintiffs' specific factual allegations demonstrate that the harm has already occurred and is ongoing, for this stage of pleading. *See* ¶¶ 9, 62, 147, 152, 160-61, 171-73, 183-86, 196-98, 208-10, 220-22, 232-34, 244-46, 258-60, 270-72, 359.

Second, Plaintiffs adequately state claims for negligence, negligence per se, breach of implied contract, and unjust enrichment under Michigan law. These claims arise from Defendant's well-established duty to protect Plaintiffs' PII. *See, e.g.*, ¶¶ 68-87, 295. Defendant breached its duty by failing to adopt adequate security protocols, thereby allowing cybercriminals access to Plaintiffs' data and by failing to report the Data Breach in a timely manner. ¶¶ 88-89. As a direct result of Defendant's breach of these duties, Plaintiffs and Class Members now face actual fraud and identity theft as well as increased risk of fraud and identity theft. ¶ 90.

Third, Defendant's attempt to compel arbitration for Plaintiffs Brooks, Harmon, and Doublin is unavailing because their claims are outside the scope of the employment arbitration agreement. Given that the Data Breach impacted a variety of individuals besides employees, the underlying claims can be completely separated from the employment relationship and are thus not arbitrable.

In sum, due to increasingly frequent cyberattacks, courts nationwide have adopted standards governing the protection of highly sensitive information. Defendant breached its duty to protect this information and Plaintiffs suffered concrete harms resulting therefrom. These factual allegations are well-pled in Plaintiffs' comprehensive and detailed Complaint. Accordingly, Plaintiffs respectfully request the Court to deny both Defendant's Motion to Dismiss and Motion to Compel Arbitration.

## FACTUAL BACKGROUND

Defendant operates a staffing agency franchise that connects individuals with prospective employers. ¶ 31. As a condition of providing these services, Defendant requires job applicants, temporary workers, placement candidates, and other clients to submit extensive sensitive personal and financial information including information necessary for employment verification, background checks, and payroll processing. ¶ 32. All eleven named Plaintiffs provided their PII to Defendant for these purposes. ¶¶ 16-26.

Between December 29, 2024, and January 12, 2025, the RansomHub ransomware group infiltrated Defendant's network systems and exfiltrated files containing the PII of approximately 144,189 individuals. ¶ 3. RansomHub claimed responsibility for the attack and threatened to release stolen data unless a ransom was paid. ¶ 5. Despite discovering the Data Breach on January 20, 2025, Defendant did not notify affected individuals until August 11, 2025—almost seven months after the Data Breach. ¶ 6.

According to RansomHub, the exfiltrated data included PII such as "personal and corporate data (passport scans, IDs, SSNs, addresses, contact information, test results, and other data), years of corporate correspondence, financial statements, HR analytics, as well as confidential contracts and non-disclosure agreements." ¶ 44. This data is particularly valuable because it contains the complete identity profiles necessary for financial fraud, tax fraud, and synthetic identity theft, making Manpower an attractive target for ransomware groups seeking to monetize stolen data. ¶ 35.

Plaintiffs' and Class Members' PII is now available on the dark web. ¶ 62. As a direct result of the Data Breach, each Plaintiff has spent significant time reviewing financial statements and monitoring credit information. ¶¶ 159, 171, 183, 196, 208, 220, 232, 244, 258, 270. Plaintiffs have

3

also suffered diminution in value of their PII, loss of privacy, increased risk of financial and identity fraud, lost time and mitigation expenses, and increased spam calls, texts, and emails, among other possible extant and future harms. ¶¶ 152, 161, 198, 210, 222, 234, 246, 272. Finally, Plaintiffs have experienced increased anxiety, stress, and fear knowing that their PII is in the hands of ransomware criminals who have demonstrated their willingness to exploit such data for financial gain. ¶¶ 164, 176, 189, 201, 213, 225, 237, 249, 263, 275.

## LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(1)

Standing under Federal Rule of Civil Procedure 12(b)(1) requires that Plaintiffs allege the following three elements: "(1) that he has suffered an 'injury in fact,' (2) that there is a 'causal connection between the injury and the conduct complained of,' and (3) that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Kiser v. Reitz*, 765 F.3d 601, 607 (6th Cir. 2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

### B. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, dismissal is improper so long as the plaintiff's claim is "plausible on its face," meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, the court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in favor of the non-moving party. *See Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 867 (6th Cir. 2020).

### C. Arbitration

The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it "does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). Motions to dismiss on the basis of an arbitration clause are properly brought under Rule 12(b)(6). *Washington v. Roosen, Varchetti & Oliver, PLLC*, 894 F. Supp. 2d 1015, 1029 (W.D. Mich. 2012) (Maloney, C.J.).

### ARGUMENT

### I. Plaintiffs Sufficiently Establish Article III Standing.

Article III standing requires (1) an injury-in-fact (2) that is fairly traceable to defendant's alleged conduct, and (3) that is likely to be redressed by a favorable court ruling. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). An injury-in-fact must be concrete, particularized, and actual or imminent. *Id*. And an injury-in-fact is "concrete" when it has a close relationship to a harm traditionally recognized in American courts. *Id*. at 424.

At the pleading stage, a plaintiff "only needs to allege facts that, when assumed true, make a plausible claim that she has standing." *Rodriguez v. CRG Lynwood LLC*, No. 24-111576, 2025 WL 2700614, at *2 (E.D. Mich. Sep. 22, 2025)[2] (citing *Ass'n of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.*, 13 F.4th 531, 544 (6th Cir. 2021)).

As explained below, Plaintiffs allege numerous injuries-in-fact—including: (1) loss of privacy; (2) actual fraud; (3); the substantial risk of future harm; (4) an influx in targeted and unwanted spam; (5) lost time and effort; and (6) emotional injuries.

### A. Plaintiffs' Privacy Injuries Establish Standing.

---

[2]    A copy of the opinion in *Rodriguez* was filed by Defendant at ECF No. 22-4.

In *Rodriguez*, the plaintiff alleged that "her privacy was violated" when defendant failed to prevent her private information from being accessed in a data breach. 2025 WL 2700614, at *3. The court held that plaintiff "is entitled to the benefit of the doubt," and that given that defendant notified plaintiff that her information was potentially accessed, plaintiff's "privacy injury was 'actual' for purposes of standing." *Id.* The court further concluded that plaintiff's privacy injury closely resembles an invasion of privacy tort and is, therefore "concrete" and "satisfies the injury-in-fact requirement of standing." *Id.* at *4. The relevant inquiry is not "the *degree* of [the plaintiff's] harm" but whether the harm is "similar in *kind* to one recognized at common law." *Dickson v. Direct Energy, LP*, 69 F.4th 338, 345-48 (6th Cir. 2023) (holding that a ringless, unwanted voicemail is analogous to the tort of intrusion upon seclusion and is therefore a concrete injury) (emphases in original). "Various intangible harms can also be concrete . . . . Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion*, 594 U.S. at 425.

Here, Plaintiffs allege a loss of privacy as a result of their Private Information being accessed without their authorization. ¶¶ 43-46, 147-52, 161, 173, 183-85, 198, 210, 222, 234, 246, 260, 272. The Data Breach was no accident— a notorious cybercriminal publicly claimed that it took the Private Information in the breach and then posted about the data on its dark web leak site, and several Plaintiffs have been notified that their Private Information was found on the dark web in the aftermath of the Data Breach. ¶¶ 43-46. As courts in the Sixth Circuit have repeatedly concluded, Plaintiffs have standing "because [t]his injury "resemble[s]" the torts of public disclosure of private facts and intrusion upon seclusion." *Rodriguez*, 2025 WL 2700614, at *4 (quoting *Salazar v. Paramount Global*, 133 F.4th 642, 647 (6th Cir. 2025)); *Stinson v. Yum! Brands, Inc.*, No. 3:23-cv-183, 2025 WL 2755879, at *21-22 (W.D. Ky. Aug. 29, 2025) (holding that "loss

6

of privacy" is an "injury-in-fact"); *In re CBIZ Data Breach Litig.*, No. 1:24-CV-1722, 2025 WL 1557033, at *5 (N.D. Ohio June 2, 2025) (finding standing when plaintiffs alleged "invasion of privacy"); *Smith v. Am. Pain & Wellness, PLLC*, 747 F. Supp. 3d 989, 1001, 1003 (E.D. Tex. 2024) ("[E]xposure of private PII to unauthorized third parties is 'sufficiently concrete' to support a claim for damages"). Thus, standing exists based on Plaintiffs' alleged privacy injuries.

### B. The Alleged Actual Fraud Establishes Injury-In-Fact Fairly Traceable to the Alleged Harm.

Plaintiff Frederick Cooper alleges that he suffered fraudulent charges in his checking account after the Data Breach, which is the same account utilized by Defendant for his paycheck deposits. ¶ 186. He further alleges being notified that his Private Information was found on the dark web and discovering several unrecognized and unauthorized credit inquiries on his credit report since the breach. ¶ 183. Defendant glosses over these allegations by arguing, without more, that the checking account was not impacted by the incident. Motion at 10. Defendant's bare assertion is not part of the pleadings and cannot defeat Plaintiffs' allegations. Fed. R. Civ. P. 7.

Defendant admits that Plaintiff Cooper's Social Security number was impacted in the Data Breach, and thereafter, he suffered fraudulent charges and discovered other unauthorized activity on his credit report.. ¶¶ 44, 186; ECF No. 21-1 at PageID.254. Courts have repeatedly concluded that such allegations suffice to confer standing. *Lochridge v. Quality Temp. Servs., Inc.*, No. 22-cv-12086, 2023 WL 4303577, at *4 (E.D. Mich. June 30, 2023) (holding that allegations of fraudulent activity "further support a finding that plaintiff has met the injury in fact requirement"); *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1158-59 (D. Minn. 2014) ("unlawful charges" are a concrete injury and summary judgment is the appropriate stage to argue about the merits of the allegations); *Hutton v. Nat'l Bd. of Examiners in Optometry*, Inc., 892 F.3d 613, 623 (4th Cir. 2018) (finding that injuries were fairly traceable to defendant's failure to

safeguard information); *In re SuperValu, Inc.*, 870 F.3d 763, 772 (8th Cir. 2017) (holding that credit card fraud which is "an actual, concrete, and particularized injury").

Moreover, because theft of a Social Security number enables numerous manners of fraudulent activity, Plaintiff Cooper has established that his injuries are fairly traceable to the Data Breach. *See Weisenberger v. Ameritas Mut. Holding Co.*, 597 F. Supp. 3d 1351, 1359 (D. Neb. 2022) ("The kind of PII that the plaintiff alleged was compromised in the data breach . . . is the kind of information, unlike mere credit card information, that can lead to a wide range of security fraud"); *In re Bon Secours Mercy Health Data Breach Litig.*, No. 1:24-cv-594, 2025 WL 1827804, at *5 (S.D. Ohio July 2, 2025) (holding that injuries are fairly traceable because "bad actors can utilize Fullz packages . . . to link individuals' compromised PII with publicly available information"); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021) (recognizing the "unequivocal damage that can be done with" Social Security numbers which create "a 'material' and 'substantial' risk of identity theft"); *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 390 (6th Cir. 2016) (finding allegations of harm and attempted misuse of Social Security numbers fairly traceable to data breach because "hackers were able to access Plaintiffs' data only because Nationwide allegedly failed to secure the sensitive personal information").

### C. Targeted and Suspicious Spam Calls Establish Standing.

In addition, Plaintiffs adequately allege standing through their assertions that, following the Data Breach, Plaintiffs experienced a surge in targeted and suspicious spam calls, text messages, and emails. ¶¶ 152, 161, 173, 185, 195, 198, 210, 222, 234, 246, 260. The Sixth Circuit has long held that an unwanted voicemail is a concrete injury. *Dickson*, 69 F.4th at 345-48. Since then, courts have repeatedly concluded that unwanted spam after a data breach establishes Article

III standing. *See, e.g.*, *In re Flagstar Dec. 2021 Data Sec. Incident Litig.*, No. 22-cv-11385, 2024 WL 5659583, at *5 (E.D. Mich. Sep. 30, 2024) ("Increases in the number of scam and phishing calls, texts, and emails are cognizable injuries."); *Vivali v. One Point HR Sols., LLC*, No. 2:24-185-DCR, 2025 WL 1158740, at *3-4 (E.D. Ky. Apr. 21, 2025) (finding standing where plaintiffs alleged "a dramatic uptick in spam and scam calls"); *Tate v. EyeMed Vision Care, LLC*, No. 1:21-cv-36, 2023 WL 6383467, at *5 (S.D. Ohio Sep. 29, 2023) (finding that spam communications after a data breach "annoy, harass, and, in the case of phone calls, temporarily claim control over an individual's personal device" which "constitute cognizable Article III injuries in fact") (citing *Dickson*, 69 F.4th at 345); *Doe v. Mission Essential Grp.*, No. 2:23-cv-3365, 2024 WL 3877530, at *6 (S.D. Ohio Aug. 20, 2024) (finding "receipt of unsolicited commercial email communications to be a concrete harm"). This Court should accordingly conclude that these alleged injuries confer standing.

### D.  Plaintiffs' Remaining Injuries Also Confer Standing.

Furthermore, in response to the substantial risk of harm and other injuries, Plaintiffs spent time and effort, *inter alia*, reviewing financial statements and monitoring credit reports. ¶¶ 159-60, 171-72, 183-84, 196-97, 208-09, 220-21, 232-33, 244-45, 258-59, 270-71. Such allegations are sufficient to demonstrate damages. *See, e.g.*, *Hummel v. Teijin Auto. Techs., Inc.*, No. 23-cv-10341, 2023 WL 6149059, *11-12 (E.D. Mich. Sept. 20, 2023) (noting the "host of alleged damages" including lost time resulting from a data breach).

Plaintiff also allege diminished value of private information and lost benefit of the bargain. ¶¶ 9, 90, 134, 347. These are compensable injuries. *In re Numotion Data Incident Litig.*, No. 3:24-cv-00545, 2025 WL 57712, at *5 (M.D. Tenn. Jan. 9, 2025) (finding standing when plaintiffs alleged lost benefit of the bargain) (citing *Springer v. Cleveland Clinic Emp. Health Plan Total*

9

*Care*, 900 F.3d 284, 287 (6th Cir. 2018)); *Finesse Express, LLC v. Total Quality Logistics, LLC*, No. 1:20CV235, 2021 WL 1192521, at *3 (S.D. Ohio Mar. 30, 2021) ("[A] loss in value of personal information supports a finding that a plaintiff has suffered an injury in fact.").

Finally, Plaintiffs allege suffering anxiety, stress, and fear as a result of their Private Information being exposed in the Data Breach and the potential for ongoing fraud and identity theft. ¶¶ 150, 164, 176, 189, 201, 213, 225, 237, 249, 263, 275. Emotional distress after a data breach is routinely found sufficient, especially when coupled with other harms, to establish Article III standing. *See, e.g.*, *Kingen v. Warner Norcross + Judd LLP*, 2023 WL 11965363, at *3 (W.D. Mich. Oct. 5, 2023) (finding standing when plaintiffs alleged "anxiety and increased concerns for the loss of privacy"); *Bowen v. Paxton Media Grp, LLC*, No. 5:21-CV-00143-GNS, 2022 WL 4110319, at *6 (W.D. Ky Sept. 8, 2022) (averments of mental distress related to plaintiffs' fear of identity theft and of stress, nuisance and annoyance of dealing with issues resulting from a data breach are sufficient to show cognizable injury).

### E.  The Alleged Substantial Risk of Further Harm Establishes Standing.

Plaintiffs have likewise sufficiently alleged a substantial risk of future harm as an injury-in-fact that is fairly traceable to the alleged harm because they have alleged that their most sensitive information, including Social Security numbers, were taken in a targeted cyberattack and posted on the dark web by a cybercriminal group, that they have already begun experiencing fraudulent charges, invasive and unwanted spam communications, that the risk of further harm is imminent, and that these injuries have caused them increased emotional distress. These allegations are more than enough.

The Supreme Court has explained that where plaintiffs seek to establish standing based on an imminent injury, the "'threatened injury must be *certainly impending* to constitute injury in fact,'"

10

*or* there must be "a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409-14, n.5 (2013). In considering whether a substantial or imminent risk of harm constitutes a concrete injury, federal courts regularly consider whether the data was taken via a targeted data breach, whether any subset of the data has been misused, and whether the type of data is so sensitive that it creates a high risk of identity theft or fraud. *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 303 (2d Cir. 2021); *Webb v. Injured Workers Pharm., LLC*, 72 F.4th 365, 376 (1st Cir. 2023) ("That at least some information stolen in a data breach has already been misused also makes it likely that other portions of the stolen data will be similarly misused."); *Coffey v. OK Foods Inc.*, No. 2:21-cv-02200, 2022 WL 738072, at *3 (W.D. Ark. Mar. 10, 2022) ("[S]tolen social security numbers [] create a higher risk of identity theft, and, therefore, Plaintiff has a substantial risk of identity theft"); *Mason v. Wright Bros. Constr. Co., Inc.*, No. 1:24-cv-384, 2025 WL 939709, at *7 (E.D. Tenn. Mar. 27, 2025) ("Given the type of data stolen here, privacy harm and an increased risk of identity theft are cognizable injuries. . . . arising from Defendant's negligence in securing the PII.").

Applying the same considerations, the Sixth Circuit has concluded that "allegations of a substantial risk of harm, coupled with reasonably incurred mitigation costs, are sufficient to establish a cognizable Article III injury at the pleading stage of the litigation." *Galaria*, 663 F. App'x at 388; *see also Haney v. Charter Foods N., LLC*, 747 F. Supp. 3d 1093, 1105 (E.D. Tenn. 2024) ("*Galaria*'s holding . . . squares with *TransUnion*'s holding that 'the mere risk of future harm, standing alone, cannot qualify as a concrete harm . . . unless the exposure to the risk of future harm itself causes a separate concrete harm[.]'") (emphasis in original) (internal citations omitted). Defendant argues that Plaintiffs' risk of harm is speculative, but "[t]here is no need for speculation

where Plaintiffs allege that their data has already been stolen and is now in the hands of ill-intentioned criminals. . . . Where a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in Plaintiffs' complaints." *Galaria*, 663 F. App'x at 388. "Having one's social security number stolen seems an obvious harm. If it were not a harm, why should [defendant] (or anyone else) take any data security measures? [Defendant] might as well leave its customer lists in a spreadsheet on its website." *Krupa v. TIC Int'l Corp.*, 2023 WL 143140, at *2 (S.D. Ind. Jan. 10, 2023); *see also Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693 (7th Cir. 2015) ("Why else would hackers break into a store's database and steal consumers' private information? Presumably, the purpose of the hack is, sooner or later, to make fraudulent charges or assume those consumers' identities."). The same reasoning applies here.

Plaintiffs have not only alleged that their most sensitive information, including Social Security numbers, were taken in a targeted cyberattack and posted on the dark web by a cybercriminal group, but they have already begun experiencing fraudulent charges, invasive and unwanted spam communications, and increased emotional distress. ¶¶ 43-46, 147-52, 161, 173, 183-86, 198, 210, 222, 234, 246, 260-63, 272-75. At this stage, Plaintiffs sufficiently allege Article III standing based on imminent risk of fraud or identity theft. Countless cases have reached the same conclusion. *See, e.g.*, *Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661, 690 (W.D. Ky. 2024), *amended*, 2025 WL 964446 (W.D. Ky. Mar. 31, 2025) (finding imminent harm well pled where PII was targeted and could be used to commit identity theft or fraud); *Silveira v. Commer. Specialty Truck Holdings, LLC*, No. 5: 25-048, 2025 WL 2323911, at *3 (E.D. Ky. Aug. 12, 2025) (holding that plaintiff has standing because "[w]here a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for [] fraudulent

purposes") (citation omitted); *Stinson*, 2025 WL 2755879, at *6 (holding that plaintiffs "alleged a sufficiently imminent risk of future harm for Article III standing"); *Lochridge*, 2023 WL 4303577, at *4 (same); *Polkowski v. Jack Doheny Companies, Inc.*, No. 2:25-cv-10516, 2025 WL 3079358 at *5 (E.D. Mich. Nov. 4, 2025) ("Plaintiff has sufficiently pled a cognizable injury as to future harm, as he alleges that his data is already on the dark web.").

## II.  Plaintiffs Have Sufficiently Alleged That Defendant Acted Negligently

To prove a claim for negligence under Michigan law, plaintiffs must demonstrate "(1) that defendant owed them a duty of care, (2) that defendant breached that duty, (3) that plaintiffs were injured, and (4) that defendant's breach caused plaintiffs' injuries." *Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 688 (Mich. 2005). This standard is not a high bar to clear. Indeed, courts routinely reject analogous motions seeking dismissal of negligence claims. *See, e.g.*, *Martinez v. Mentavi, Inc.*, No. 1:25-cv-228, 2025 WL 3780427, at *2 (W.D. Mich. Oct. 9, 2025) (noting that the court "denied the motion to dismiss as to the state law claims at the Rule 16 conference").

This is because courts in Michigan have recognized that "[c]ompanies have a duty to take reasonable precautions" to protect users' PII "due to the reasonably foreseeable risk of danger of a data breach incident." *Lochridge*, 2023 WL 4303577, at *6 (internal quotations omitted). In the instant matter, Defendant does not contest that it owed Plaintiffs and the Class Members a duty to protect their private, sensitive information, that said duty was breached, or that Defendant's breach caused Plaintiffs' injuries. Rather, Defendant asserts that Plaintiff has failed to allege a present injury. *See* Motion at 15 ("Plaintiffs must allege that they suffered actual, *present* injury – which the have not done" and thus concluding that "Plaintiffs do not have a legally cognizable claim") (emphasis in Motion). Defendant's argument carries no weight.

Defendant primarily relies on two cases, along with their progeny, to support their argument: *Doe v. Henry Ford Health Sys.*, 865 N.W.2d 915, 921 (Mich. App. 2014) and *Rakyta v. Munson Healthcare*, No. 354831, 2021 WL 4808339 (Mich. Ct. App. Oct. 14, 2021). *See* Motion at 11-15. These cases simply reinforce the fact that the Michigan Supreme Court has held that a plaintiff must allege a present injury in order to give rise to a negligence cause of action. *Henry*, 701 N.W.2d at 688.

Here, Plaintiffs have amply pled a present injury. *See, e.g.*, ¶ 137 ("Plaintiffs and Class Members *have suffered* . . . actual injury as a direct result of the Data Breach) (emphasis added). They allege that they were already injured and that their information was already viewed by third parties. ¶ 301 (alleging that Plaintiffs' Private Information was "viewed by unauthorized persons"). Moreover, Plaintiffs plainly allege their PII was stolen by cybercriminals. *See, e.g.*, ¶¶ 43-46 (alleging that the cybercriminal group RansomHub claimed credit for the Data Breach and posted information about the Data Breach on its dark web site). These allegations are sufficient. *See, e.g.*, *Kingen*, 2023 WL 11965363, at *5 (denying dismissal of negligence claim where plaintiffs alleged that a third party stole plaintiffs' PII and that they have already been injured).[3] *See also* Part I, above.

In *Kingen*, the court noted that while "Plaintiffs' complaint makes it difficult to surmise which alleged injuries have already happened and which injuries could happen", it nonetheless denied defendant's motion to dismiss plaintiffs' negligence claim. *Kingen*, 2023 WL 11965363, at *5. The *Kingen* court noted that plaintiffs' allegations that their injuries have occurred make it

---

[3]     The *Kingen* court subsequently denied defendant's motion for reconsideration but granted its alternative request for interlocutory appeal regarding the issue of standing. *Kingen v. Warner Norcross + Judd LLP*, 2023 WL 11960672 (W.D. Mich. Nov. 29, 2023).

"sufficiently distinct from *Doe v. Henry Ford Health System*" and, unlike *Rakyta*, where plaintiffs only pled an "immediate risk of harm." *Id.* Some of the injuries claimed in *Kingen* include:

> (i) actual identity theft; (ii) the loss of the opportunity of how their PII and financial information is used; (iii) the compromise, publication, and/or theft of their PII and financial information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and financial information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach

*Kingen*, 2023 WL 11965363, at *4.

The allegations in the instant matter substantially parallel the allegations the *Kingen* court found sufficient—and the allegations here go well beyond those in *Kingen*. For example, Plaintiffs here allege "actual fraud and identity theft[.]" ¶ 90; *see also* ¶ 186 (fraudulent charge to Plaintiff Cooper's checking account). Plaintiffs also allege "damages to and diminution in the value of [their] PII", a "loss of privacy," and "lost time and expenses to engage in mitigation efforts" dealing with the consequences of the Data Breach. *See, e.g.*, ¶ 152 (Brooks), ¶ 161 (Conrad), ¶ 173 (C. Cooper), ¶ 185 (F. Cooper), ¶ 198 (Doublin), ¶ 210 (Ghinelli), ¶ 222 (Harmon), ¶ 234 (Howard), ¶ 246 (Lane), ¶ 260 (Middleton), ¶ 272 (Platter).

Indeed, courts have found dismissal unwarranted where plaintiff has alleged that defendant "did not encrypt Plaintiff's PII" and that this allegation properly supported a claim of negligence in a data breach case. *See, e.g.*, *Hummel*, 2023 WL 6149059, *7. Here, Plaintiffs plainly allege that the Data Breach could have been prevented had Defendant "encrypt[ed] the PII in its possession[.]" ¶ 50. Moreover, Defendant readily acknowledges that Plaintiff Brooks was alerted that her Social Security number was found on the dark web and that resultingly, she closed her Chase account and debit cards. *See* Motion at 4. Thus, the instant action is far afield from *Rodriguez v. CRG Lynwood*

15

*LLC*, where the court dismissed plaintiff's negligence claim finding, *inter alia*, that plaintiff "has not been hindered in her ability to use the compromised information[.]" *Rodriguez*, 2025 WL 2700614, at *5.[4]

Defendant also acknowledges that Plaintiff Cooper was notified that his information was on the dark web and that he had several unknown credit inquiries on his credit report. *Id.* This is more than sufficient to allege damages. *Mason*, 2025 WL 939709, at *7 (finding damages plausibly alleged where plaintiffs asserted that their Social Security number was taken in a data breach and thus would require them to pay for future credit and identity theft monitoring). Indeed, all Plaintiffs allege that the Data Breach included the exfiltration of their Social Security numbers. ¶ 4, ¶ 127.

Simply put, the allegations of Plaintiffs Brooks and Cooper alone, which include allegations of present injuries due to unauthorized credit inquiries and closing of certain accounts, easily distinguishes the instant matter from the cases relied upon by Defendant. This includes *In re Flagstar*, where the court dismissed plaintiffs' negligence because they could only assert future possible injuries rather than present injuries, 2024 WL 5659583, at *8-9, 11, and *Polkowski*, where another court dismissed plaintiff's negligence claim due to the failure to allege "compensable injury such as successful identity theft or financial loss[.]" 2025 WL 3079358, at *9.[5] All Plaintiffs here allege present injuries and Plaintiff Brooks and Cooper go into detail about those present injuries. Such allegations amply support denial of Defendant's motion to dismiss.

---

[4]    The *Rodriguez* court was also troubled by the fact that there was a span of three years between the data breach and plaintiff's complaint, during which time plaintiff did not experience "any misuse or even attempted misuse of her data[.]" *Rodriguez*, 2025 WL 2700614, at *1.

[5]    The state court actions relied upon by Defendant are also readily distinguishable for the same reasons. *See, e.g.*, *Canterbury v. Corewell Health*, No. 24-00189-NZ (Kent Cnty. Cir. Ct. June 11, 2024) (dismissing case due to "plaintiff's allegations involve potential future injuries and prophylactic measures to prevent or mitigate future injuries").

Moreover, all Plaintiffs allege that the value of their PII is now diminished due to the Data Breach. *See* ¶ 9. This is sufficient to demonstrate actual, present injury. *See, e.g.*, *Mason*, 2025 WL 939709, at *7 (recognizing diminished value of PII as a cognizable injury and denying motion to dismiss negligence claim). Further, all Plaintiffs have alleged that they now suffer from increased spam calls, texts, and emails due to the Data Breach. *See* ¶¶ 152, 161, 173, 185, 198, 210, 222, 234, 246, 260, 272. This is also a recognized injury. *See, e.g.*, *Gay v. Garnet Health*, No. 23-cv-06950, 2024 WL 4203263, at *5 (S.D.N.Y. Sept. 16, 2024) (finding that plaintiffs suffered damages due to "ongoing harassment and embarrassment in the form of unwanted targeted advertisements"). Accordingly, all Plaintiffs have sufficiently alleged an actual and present injury sufficient to warrant denial of Defendant's motion to dismiss their negligence claim.

### III. Plaintiffs Adequately State a Claim for Breach of Implied Contract.

As Defendant notes, a breach of implied contract claim in Michigan requires (1) the existence of a contract; (2) breach; and (3) damages resulting from the breach. *Bank of Am., NA v. First Am. Title Ins. Co.*, 878 N.W.2d 816, 829 (Mich. 2016). Here, Defendant contests (1) meeting of the minds to form an implied contract, (2) consideration for an implied contract, and (3) damages. Motion at 18. Defendant's argument is incorrect—primarily because it must accept the well-pled allegations of the complaint as true under Rule 12(b)(6). Plaintiffs' Complaint sufficiently states a claim for breach of implied contract on the alleged facts.

First, Plaintiffs have adequately alleged that Plaintiffs and Defendant had a meeting of the minds to form an implied contract. Michigan courts have held that "[w]here the intention to form a contract is not explicitly manifested by words of the parties, a contract implied in fact may exist if its existence may be gathered by implication or from proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the

transaction." *Temborius v. Slatkin*, 403 N.W.2d 821, 826 (Mich. App. 1986). Accordingly, "[t]he existence of such a contract is usually a question of fact" for the jury. *Id*; *see also Rocco v. Mich. Dep't of Mental Health*, 319 N.W.2d 674, 677 (Mich. App. 1982), *aff'd sub nom. Ross v. Consumers Power Co.*, 363 N.W.2d 641 (Mich. 1984) ("The existence of an implied contract, of necessity turning on inferences drawn from facts and circumstances, involves questions of fact.") (citation omitted).

Indeed, in Michigan, when "dealing with unauthorized disclosures, courts have allowed recovery based on . . . breach of implied contract," finding both meeting of the minds and consideration, including in the employment context or other contexts where there may also be express contracts between the parties. *Stratton v. Krywko*, No. 248669, 2005 WL 27522, at *13 (Mich. App. Jan. 6, 2005) (citing *Morris v. Consolidation Coal Co.*, 446 S.E. 2d 648, 656 (W. Va. 1994)); *see also Lochridge*, 2023 WL 4303577, at *7 (applying Michigan law and finding an implied contract to protect PII); *In re Arby's Rest Grp Inc Litig*, No. 1:17-CV-0514-AT, 2018 WL 2128441, at *16 (N.D. Ga. Mar. 5, 2018) ("Several federal courts have recognized implied-in-fact contract claims in data breach cases" (citing authority)); *In re Arthur J Gallagher Data Breach Litig*, 631 F Supp 3d 573, 591 (N.D. Ill. 2022) ("Plaintiffs have pled the existence of Defendants' privacy policy which applied to personal information. . . . This policy supports a finding of an implicit promise to protect employees' personal information in exchange for their employment."); *Sackin v. TransPerfect Glob., Inc.*, 278 F Supp 3d 739, 750 (S.D.N.Y. 2017) (finding that privacy policies and security manual support an implicit promise).

The Court should find the same here. Plaintiffs allege that they provided their PII to Defendant in connection with seeking employment opportunities or as employees of Defendant. *See, e.g.*, ¶¶ 154, 166. In exchange, Defendant accepted the responsibility to keep Plaintiffs' PII

safe and to effectively notify Plaintiffs if their PII was exposed. Each party understood the nature of the arrangement. The implied contract was memorialized by Defendant's privacy notices and communications. ¶ 36. Thus, Plaintiffs plausibly allege an implied contract arose when they provided PII to Defendant in exchange and in furtherance of the employment services offered by Defendant, and that Defendant, through its privacy notices and communications with Plaintiffs, assured them their PII would be protected. *See id*.

In addition, Plaintiffs sufficiently allege consideration. In data breach cases involving the theft of employees' data, Plaintiffs' labor and Private Information are adequate consideration to form an implied contract. *Hummel*, 2023 WL 6149059, at *9 (finding plaintiff adequately pled consideration where she alleged she entrusted her Private Information, as part of an employment relationship to Defendant and, in so doing, entered into implied contract by which Defendant agreed to protect her Private Information). Plaintiffs allege Defendant's duties to protect their Private Information extend beyond the preexisting duties imposed by statutes and regulations. Indeed, "[u]nder Michigan law . . . the preexisting legal duty rule applies only to duties imposed by statute or contract." *Id.* (finding preexisting duty rule did not apply in data breach case where plaintiff alleged defendant's duty arose under tort).

Moreover, Plaintiffs allege actual damages resulting from Defendant's breach of its implied contract. For example, Plaintiff Cooper has already experienced identity theft following the Data Breach. ¶ 186. Moreover, all Plaintiffs have had to spend numerous hours responding to the Data Breach and its aftermath. ¶¶ 148, 160, 172, 197, 209, 221, 233, 245, 259, 271. These harms are in addition to the diminution in value of Plaintiffs' PII, loss of the benefit of the bargain, and the ongoing risk of identity theft they now face. *See* ¶¶ 130-37. Courts that have addressed this issue have held that identity theft coupled with allegations of damages, such as time spent addressing

the misuse, properly pleads injury and damages. For example, the Court in *Hummel* found such allegations to be sufficient, and held the analysis of damages proximately caused by a defendant is the same for a breach of implied contract claim as for a negligence claim, and that an actual fraud allegation of an unauthorized loan transaction was sufficient to meet the damages element for a breach of implied contract claim in a data breach action. *Hummel*, 2023 WL 6149059, at *12 (finding Article III standing analysis in *Galaria*, 663 F. App'x at 385 instructive on damages analysis). Therefore, Plaintiffs' breach of implied contract claim should be allowed to proceed.

Defendant's suggestion that Plaintiffs' alleged damages are speculative is unpersuasive. Defendant's cited cases are easily distinguished and inapposite. In *Rakyta*, 2021 WL 4808339, at *3-4, the plaintiff did not allege she or any other class member was a victim of identity theft. Rather, the plaintiff *only* alleged she and the potential class members were placed at an increased risk of harm for fraud and identity theft. *Id.* Likewise, in *Doe*, 865 N.W.2d at 921, the plaintiff did not suffer actual misuse of her PII. Here, the allegations that one Plaintiff has already experienced actual data misuse and that all Plaintiffs have spent time addressing the ramifications of the Data Breach, are reasonable and cognizable damages. ¶¶ 37, 70, 85; *see also Bowen*, 2022 WL 4110319, at *7 (plaintiffs with allegations of fraud similar those here found to have "successfully pled a claim [for breach of implied contract] for which relief can be granted"); *In re Anthem, Inc Data Breach Litig*, No. 15-md-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016); *In re Experian Breach Litig*, No. SACV 15-1592 AG (DFmX), 2016 WL 7973595, at *3-5 (C.D. Cal. Dec. 29, 2016); *In re Cap One Consumer Data Sec Breach Litig*, 488 F. Supp. 3d 374, 403 & n 15 (E.D. Va. 2020). Therefore, Plaintiffs adequately state a claim for breach of implied contract.

**IV.    Plaintiffs Adequately State a Claim for Unjust Enrichment.**

As Defendant notes, Motion at 21, to state an unjust enrichment claim under Michigan law, all a plaintiff must allege to establish a claim for unjust enrichment is that he or she conferred a benefit on the defendant, and that defendant's retention of that benefit without compensating plaintiff resulted in inequity to plaintiff. *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 904 (Mich. App. 2006).

Contrary to Defendant's argument, that is precisely what Plaintiffs allege here. *See* ¶¶ 353-61. Defendant cites no authority that a benefit for an unjust enrichment claim must be monetary. As employees, the benefits Plaintiffs conferred were their labor, and also their PII itself, which were both necessary to facilitate Defendant's business and financial gain, and both conferred directly on Defendant. ¶ 353. The benefits Plaintiffs conferred on Defendant were supposed to be utilized by Defendant to pay for reasonable data security for Plaintiffs' and Class Members' PII, but instead, Defendant enriched itself by saving the costs that should have gone towards data privacy measures which resulted in the Data Breach—to the detriment of Plaintiffs and Class Members. ¶¶ 352-54. Accordingly, allowing Defendant to retain the benefits of Plaintiffs' labor and PII would result in an inequity where Plaintiffs and Class Members enriched Defendant for data security that it did not provide. ¶¶ 355-60.

Courts around the country routinely decline to dismiss unjust enrichment claims in data breach cases with similar facts to here. *See, e.g.*, *Bowen*, 2022 WL 4110319, at *8 ("Plaintiffs have sufficiently pled facts from which a reasonable jury could infer that Defendant received a benefit at the expense of the Plaintiffs 'without payment of its value'" and therefore state a claim for unjust enrichment.); *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F Supp 3d at 412 ("[F]ailure to secure a party's data can give rise to an unjust enrichment claim where a defendant accepts the benefits accompanying plaintiff's data and does so at the plaintiff's expense by not implementing

adequate safeguards."); *Fero v. Excellus Health Plan, Inc*, 304 F. Supp. 3d 333 (W.D.N.Y. 2018) (same); *In re Premera Blue Cross Customer Data Sec. Breach Litig*, 198 F. Supp. 3d 1183, 1201 (D. Or. 2016) (same). This Court should do the same.

## V.    Plaintiffs Consent to Voluntary Dismissal of their Invasion of Privacy Claim

Plaintiffs voluntarily dismiss their claim regarding invasion of privacy.

## VI.    The Motion to Compel Arbitration Should Be Denied

Defendant seeks to dismiss the claims of Plaintiffs Brooks, Doublin, and Harmon on the grounds that they signed employment arbitration agreements (collectively, "Agreement").[6] *See*, *e.g.*, ECF No. 22-2. This Motion should be denied because these data breach claims fall outside the scope of the Agreement. In the Sixth Circuit, courts "look to state contract law to determine whether the arbitration clause itself was validly obtained[.]" *Gavette v. United Wholesale Mortg., LLC*, No. 24-1557, 2025 WL 318224, at *1 (6th Cir. Jan. 28, 2025), *cert. denied*, 146 S. Ct. 361 (2025). Accordingly, Plaintiffs analyze the Agreement under Michigan law.

In Michigan, a "three-part test applies for ascertaining the arbitrability of a particular issue: "1) is there an arbitration agreement in a contract between the parties; 2) is the disputed issue on its face or arguably within the contract's arbitration clause; and 3) is the dispute expressly exempted from arbitration by the terms of the contract." *Petorovski v. Nestorovski (In re Estate of Nestorovski)*, 769 N.W.2d 720, 735 (Mich. App. 2009). Only the second element is at issue here.

The Michigan Supreme Court recognized that if:

> litigating parties have an employment or other contractual relationship, one party will likely be able to find some factual connection, however remote, between their dispute and the relationship. But we require more than the barest factual connection for a claim to be relative to employment or another pertinent contractual relationship. [Thus,] **in determining whether a claim**

---

[6]     Each of the employment arbitration agreements (ECF No. 22-2, PageID.299-309) are identical, so Plaintiffs refer to a singular Agreement for convenience.

> **is relative to employment, we adopt the approach of a number of other jurisdictions that ask if [the] action could be maintained without reference to the contract or relationship at issue**. This analysis functions as a tool to determine a key question of arbitrability—whether the parties agreed to arbitrate the question at issue. Such an analysis prevents the absurdity of an arbitration clause barring a party to the agreement from litigating ***any* matter** against the other party, regardless of how unrelated to the subject of the agreement, and ensures that the mere existence of a contract between the parties does not mean that every dispute between the parties is arbitrable.

*Lichon v. Morse*, 968 N.W.2d 461, 468-69 (Mich. 2021) (emphasis added, internal citations and quotation marks omitted).

The Agreement contemplates the arbitration of claims between "Employer" and "Employee" and lists a variety of exemplar claims to that effect such as Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981, the Americans with Disabilities Act, the Age Discrimination in Employment Act, etc. The Agreement also expressly incorporates the American Arbitration Association (AAA)'s Employment Arbitration Rules.[7] *See* ECF No. 22-2. In contrast to the claims contemplated by the Agreement, Plaintiffs have brought primarily tort claims arising out of the Data Breach. *See* Factual Background, *supra*. Plaintiffs' claims are far afield from, and do not arise out of, the employment context; indeed, the Data Breach impacted a broad range of individuals beyond Defendant's employees who submitted their Private Information to Defendant, including *job applicants.* ¶¶ 1, 32-33. Most of the Plaintiffs in this case are <u>not</u> employees with arbitration agreements. Therefore, under *Lichon*, the claims can be separated from the employment relationship and are not subject to arbitrability.

---

[7]    Rule R-1(b) of the AAA Employment Rules states: "The AAA will administer disputes arising out of **employment agreements** under these Rules and the Employment/Workplace Fee Schedule."  https://adr.org/media/0vrpbnm0/2025_employment_arbitration_rules.pdf  (emphasis added).

## CONCLUSION

For all of the reasons provided above, Plaintiffs respectfully request that the Court deny the Motion in its entirety. In the alternative, Plaintiffs seek leave to amend.[8]

Dated: February 23, 2026                    Respectfully submitted,

/s/ Gerald D. Wells, III
Gerald D. Wells, III*
Stephen E. Connolly*
**LYNCH CARPENTER, LLP**
1133 Penn Ave., 5th Floor
Pittsburgh Pennsylvania 15222
Telephone: (412) 322-9243
Email: gary@lcllp.com
Email: jerry@lcllp.com
Email: steve@lcllp.com

/s/ Gregory A. Mitchell
Gregory A. Mitchell (P68723)
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Email: gam@millerlawpc.com
Email: epm@millerlawpc.com

/s/ Jeff Ostrow
Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**
One West Law Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 332-4200
Email: ostrow@kolawyers.com

Leanna A. Loginov*
**SHAMIS & GENTILE P.A.**
14 NE 1st Ave., Suite 705

/s/ Scott Edward Cole
Scott Edward Cole
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone: (510) 891-9800
Email: sec@colevannote.com

/s/ Gary Klinger
Gary Klinger
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com

William B. Federman*
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Fax: (405) 239-2112
Email: wbf@federmanlaw.com

**EDELSON LECHTZIN LLP**
Marc H. Edelson*
Liberato P. Verderame *
411 S. State Street, Suite N300
Newtown, PA 18940
Telephone: (215) 867-2399
Email: medelson@edelson-law.com
Email: lverderame@edelson-law.com

---

[8] If any part of the Complaint is dismissed, Plaintiffs respectfully request leave to amend to afford Plaintiffs an opportunity to cure any deficiencies in the Complaint identified by the Court. "[R]ule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Miami, Florida 33132
Telephone: (305) 479-2299
Email: lloginov@shamisgentile.com

Tyler J. Bean*
Gabrielle Williams*
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Telephone: (212) 532-1091
Email: tbean@sirillp.com
Email: gwilliams@sirillp.com

David S. Almeida*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Ave.
Chicago, Illinois, 60614
Telephone: (708) 437-6476
Email: david@almeidalawgroup.com

Amber L. Schubert
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St, Ste 200
San Francisco, CA 94123
Tel.: 415-788-4220
Fax: 415-788-0161
aschubert@sjk.law

*Application for admission forthcoming*

*Attorneys for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 23, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Jeff Ostrow*
Jeff Ostrow

## <u>CERTIFICATE OF COMPLIANCE WITH W.D. MICH. LCivR 7.2(b)(ii)</u>

Pursuant to Local Civil Rule 7.2(b)(i)&(ii), Plaintiffs' Opposition to Defendant's Motion to Dismiss Plaintiffs' Complaint and/or Compel Arbitration does not exceed 10,800 words, including headings, footnotes, citations and quotations. Microsoft Word 2016 was used to generate a word count for the above-mentioned Brief, which contains approximately 7,482 words.

<em><u>/s/ Jeff Ostrow</u></em><br>Jeff Ostrow